NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
WRENCH TRANSPORTATION,         :
et al.,                        :
                               :    Civil Action No.: 95-cv-06203 (JLL)
            Plaintiffs,        :
                               :
                               :
FRANK BRADLEY, et al.,         :          **OPINION**
                               :
                               :
            Defendants.        :
_____:

**LINARES**, **District Judge.**

This matter comes before the Court by way of cross-motions for summary judgment filed by Plaintiffs, Wrench Transportation Systems, Inc. and James Malone, Jr. [CM/ECF Docket Entry No. 101], and  Defendants, John Kennedy and Leah Ann McMahon [CM/ECF Docket Entry No. 100].  The Court has considered the submissions made in support of and in opposition to the motions.  No oral argument was heard. Fed. R. Civ. P. 78.  For the reasons set forth below, Defendants' motion for summary judgment is GRANTED and Plaintiffs' motion for summary judgment is DENIED.

## BACKGROUND

1.    **Factual Background**

A detailed factual background of this case was set forth by the Court on the record on September 16, 2003 and October 27, 2003, and will not be repeated here, except where necessary to provide context for the pending motions for summary judgment.

Generally speaking, this action arose from Defendants' seizure of several vehicles which Plaintiffs utilized in their business activities.  As a result of this seizure, and a series of events that followed, on December 8, 1995, Plaintiffs Wrench Transportation Systems, Inc., and its sole shareholder, James Malone, Jr. (collectively "Plaintiffs"), commenced the instant cause of action against Defendants Frank Bradley (New Jersey state investigator), John Kennedy (Deputy Attorney General of New Jersey), Marianne Lewiki (New Jersey state investigator), and Leah Ann McMahon (Deputy Attorney General of New Jersey) pursuant to 42 U.S.C. § 1983, alleging that Plaintiffs were deprived of their property, in violation of the substantive component of the Fourteenth Amendment's Due Process Clause.

2.      **Procedural Background**

On September 16, 2003, this Court granted summary judgment to Defendants Kennedy and Lewicki on grounds of absolute immunity.  By way of oral Opinion rendered on October 27, 2003, this Court also (1) granted summary judgment to Defendant McMahon on absolute immunity grounds, and (2) denied summary judgment as to Defendant Bradley, finding that he was not entitled to qualified immunity.

On June 27, 2005, the Third Circuit reversed this Court's October 27, 2003 Order as to Defendant Bradley, finding that "[b]ecause Malone failed to connect Bradley's conduct to the continued retention of the vehicles in which Malone assertedly possessed a protected property interest, Bradley is entitled to summary judgment." Wrench Transp.Servs., Inc. v. Bradley, 136 Fed. Appx. 521, 524 (3d Cir. 2005) (hereinafter "Wrench I").  Accordingly, by way of Order dated October 5, 2005, this Court entered summary judgment in favor of Defendant Bradley.

On December 21, 2006, the Third Circuit affirmed this Court's grant of summary judgment as to Defendants Kennedy and McMahon "insofar as Malone attempts to rest liability on their alleged attempts to force James Malone to provide false testimony." Wrench Transp. Servs., Inc. v. Bradley, 212 Fed. Appx. 92, 100 (3d Cir. 2006) (hereinafter "Wrench II"). However, the Third Circuit reversed this Court's finding that Defendants Kennedy and McMahon were entitled to absolute immunity to the extent that such finding was "based upon their conduct in delaying the return of Malone's trucks and conditioning that return on the execution of a release." Id. at 101. Accordingly, by way of Order dated January 16, 2007, this Court vacated its prior entry of summary judgment as to Defendants Kennedy and McMahon, insofar as it was based upon their assertion of absolute immunity with respect to their conduct in delaying the return of property belonging to Plaintiffs, and conditioning the return of said property on the execution of a release.

This case was thus re-opened on January 16, 2007, and cross-motions for summary judgment were filed by the parties on March 23, 2007. Oral argument was held before this Court on July 23, 2007. Plaintiffs now argue that they are entitled to summary judgment as to the liability of Defendants Kennedy and McMahon for violating Plaintiffs' substantive due process rights.[1] Defendants Kennedy and McMahon, on the other hand, claim that (1) Plaintiffs have

---

[1] Plaintiffs also attempt to re-open discovery by challenging a protective order issued by Magistrate Judge Hedges on December 22, 1997 as part of their cross-motion for summary judgment. The Court need not address this argument as the Third Circuit already found, in the context of Wrench II, that (a) Plaintiffs failed to properly object to Magistrate Judge's December 22, 1997 ruling, and (b) any prejudice to Plaintiffs that would result in the absence of the Court's review of Magistrate Judge Hedges' decision "is not sufficient to establish the 'manifest injustice' required to review an issue in the absence of a properly filed objection to a Magistrate Judge's ruling." Wrench II, 212 Fed. Appx. at 101.

failed to establish a viable substantive due process claim, and (2) in any event, they are entitled to

qualified immunity for their conduct.

## **LEGAL STANDARD**

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil

Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue

of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then

shifts to the non-moving party to present evidence that a genuine, fact issue compels a trial. Id.

at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine

issue of material fact, not just "some metaphysical doubt as to the material facts." Matsushita

Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Thus, the non-

moving party may not rest upon the mere allegations or denials in its pleadings. See Celotex,

477 U.S. at 324. Further, the non-moving party cannot rely on unsupported assertions, bare

allegations, or speculation to defeat summary judgment. See Ridgewood Bd. of Educ. v. N.E. ex

rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and

---

Even in the absence of the Third Circuit's directive, this Court would, in any event,
decline to entertain Plaintiffs' attempt to re-open discovery. By way of Order dated February 7,
2007, this Court ordered that all discovery-related motions be filed within fifteen days of entry of
that Order. Plaintiffs failed to file any such motion within fifteen days. Instead, without leave of
Court, Plaintiffs made a belated attempt to re-open discovery by challenging Magistrate Judge
Hedges' December 22, 1997 protective order in the context of their cross-motion for summary
judgment, which was filed on March 23, 2007 – well over fifteen days from entry of this Court's
February 7, 2007 Order.

their reasonable inferences in the light most favorable to the non-moving party.  See

Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

For purposes of efficiency, the Court will first address Defendants' motion for summary

judgment.

## DISCUSSION

### 1.     Plaintiffs' Section 1983 Claim

Plaintiffs claim that Defendants, while acting under color of state law, deprived Plaintiffs

of their interest in the vehicles, in violation of Plaintiffs' constitutional rights pursuant to 42

U.S.C. § 1983.[2]  In particular, Plaintiffs claim that "[t]he evidence shows that Kennedy and

McMahon callously refused to return plaintiffs' seized vehicles that they knew were necessary to

his livelihood so that they could coerce Malone into providing testimony against other targets of

Operation Boilermaker and in order to procure personal releases from any liability for these

actions." (Pl. MSJ at 19).

To establish section 1983 liability, a plaintiff must show  "that the official acting under

color of state law caused the deprivation of a federal right." Hafer v. Melo, 502 U.S. 21, 25

(1991) (quoting Kentucky v. Graham, 473 U.S. 159, 166 (1985)).[3]  This is because section 1983

_____

[2] Section 1983 states in relevant part: "[e]very person who, under color of any statute,
ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any
citizen of the United States or other person within the jurisdiction thereof to the deprivation of
any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the
party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." 42
U.S.C. § 1983.

[3] Defendants do not dispute that they are state actors for purposes of this § 1983 cause of
action.

itself is not a source of substantive rights, but provides a vehicle for vindicating the violation of rights created by the United States Constitution or federal law. See Graham v. Connor, 490 U.S. 386, 393-94 (1989); Morse v. Lower Merion School Dist., 132 F.3d 902, 907 (3d Cir.1997). Thus, in particular, Plaintiffs allege that Defendants' conduct – in delaying the return of the seized vehicles, and conditioning said return on their execution of a release – deprived Plaintiffs of their property, in violation of the substantive component of the Fourteenth Amendment's Due Process clause.

**2.      Substantive Due Process Claim**

As a preliminary matter, the Court reiterates that the sole claim at issue is Plaintiffs' substantive due process claim.[4]  Plaintiffs do not allege a violation of the procedural component of the Due Process Clause.[5]  See generally Wrench I, 136 Fed. Appx. at 523.

"A property interest that falls within the ambit of substantive due process may not be taken away by the state for reasons that are 'arbitrary, irrational, or tainted by improper motive,' or by means of government conduct so egregious that it 'shocks the conscience.'" Nicholas v. Pennsylvania State Univ., 227 F.3d 133, 139 (3d Cir. 2000) (citations omitted).[6]  However, to

---

[4] Moreover, the sole conduct at issue is Defendants' delay in returning the seized vehicles, and the conditioning of said return on the execution of a release. See Wrench II, 212 Fed. Appx. at 100 (granting summary judgment in favor of Defendants Kennedy and McMahon "insofar as Malone attempts to rest liability on their alleged attempts to force James Malone to provide false testimony.").

[5] Moreover, Plaintiffs acknowledge that they could have challenged the deprivation of their property through the procedural due process safeguards that existed in the context of the civil forfeiture proceeding. See Tr. (July 23, 2007) at 19:6-20:17.

[6] See generally United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA, 316 F.3d 392, 400 (3d Cir. 2003) (clarifying that "executive action violates substantive due process only

prevail on a non-legislative substantive due process claim, Plaintiffs must first establish that they have a protected property interest to which the Fourteenth Amendment's due process protection applies. See, e.g., Hill v. Borough of Kutztown, 455 F.3d 225, 235 n. 12 (3d Cir. 2006); Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 427 (3d Cir. 2003); Nicholas, 227 F.3d at 140. In addition, Plaintiffs must establish a causal link between the constitutional violation alleged and the harm that Plaintiffs claim followed it. See, e.g., Miller v. City of Philadelphia, 174 F.3d 368, 374 n. 5 (3d Cir. 1999).

### A. Causal Connection

In order to show that certain state action caused Plaintiffs' injury, Plaintiffs must establish a "causal link between an alleged unconstitutional act and the harm that a plaintiff claims followed it." Miller, 174 F.3d at 374 n. 5; see also Wrench I, 136 Fed. Appx. 521, 523 (3d Cir. 2005). For example, in the context of Wrench I, the Third Circuit explained:

> To the extent Malone was deprived of his property, that
> deprivation was caused by the operation and application of New
> Jersey's civil forfeiture statute. Malone abandoned a constitutional
> attack on the direct cause of his injury by forgoing a procedural due
> process challenge to the forfeiture statute. Therefore, in order to
> assert a constitutional violation, and satisfy the threshold inquiry
> set forth by Saucier, Malone must establish some connection
> between Bradley and the civil forfeiture action by showing that
> Bradley either interfered with the dismissal of the action or breached a duty to recommend that the

Id. Here, Defendants argue that "the record is undisputed that neither of the line Deputy Attorneys General, Kennedy and McMahon, had the authority to dismiss either the criminal or

---

when it shocks the conscience.").

civil proceedings against the Plaintiffs." (Def. S.J. Br. at 41).  This Court will now address

Defendants' argument as it relates to each remaining Defendant.

### Defendant Kennedy

Defendants claim that Defendant Kennedy, who, at all relevant times was a DAG

assigned to the Environmental Crimes Bureau of the Division of Criminal Justice, "had no

responsibility whatsoever for the civil action." (Def. Statement of Material Facts, ¶ 30).  In

particular, Defendants argue that "DAG Kennedy had no involvement, whatsoever, in the offer of

the mutual release, or in the civil forfeiture litigation."  (Def. S.J. Br. at 43).  Therefore,

Defendants' claim that Plaintiffs cannot establish the requisite causal connection between

Kennedy's actions and Plaintiffs' injuries – namely the deprivation of his property. (Id. at 40-41).

In response, Plaintiffs point to a letter written by Defendant Kennedy on December 27,

1993, stating that "if I and other members of the Division of Criminal Justice are satisfied by Mr.

Malone's statement that he and Wrench Transportation, Inc. ("Wrench") are innocent of any

criminal involvement, I will recommend to DAG McMahon that the forfeiture complaint be

dismissed." (Pl.'s Response to Def. Statement of Material Facts, ¶ 30, App. Volume IV, A-904).

Plaintiffs claim that the December 27th letter written by Kennedy demonstrates his "authority

with respect to returning the vehicles." (Pl.'s Response to Def. Statement of Material Facts, ¶

71).  However, the causation analysis does not turn on whether Kennedy possessed the authority

to dismiss the civil forfeiture action.  Instead, summary judgment must be granted unless

Plaintiffs raise a genuine issue of material fact as to whether Kennedy "actually exercised any

authority reaching the forfeiture action." Wrench I, 136 Fed. Appx. at 523 n. 1.  The December

27th letter – indicating that Kennedy would be willing to make a recommendation to Defendant McMahon that the forfeiture complaint be dismissed – does not demonstrate that Kennedy actually "interfered with the dismissal of the action or breached a duty to recommend that the action be dismissed."[7]  To the contrary, evidence contained in the record indicates that even after Kennedy met with Malone on December 30, 2003, he was "still very much on the fence about whether [Malone] was truthful."[8]  (Def. Statement of Material Facts, ¶ 135; Flanagan Aff., Ex. 9, Tr. (June 14, 2002) at 62:8-11).

Plaintiffs essentially concede the absence of specific evidence establishing a causal connection between Defendant Kennedy and the outcome of the forfeiture proceedings.  For example, during  oral argument held on July 23, 2007, this Court specifically asked Plaintiffs' counsel the following questions:

> THE COURT:          Where is your evidence that Kennedy was involved
>                     in that part?

---

[7]  Wrench I, 136 Fed. Appx. at 523.

[8]  The relevant excerpt from Kennedy's June 14, 2002 deposition transcript is as follows:

Q.     So it would be fair to say that after the meeting, each of you would have had an opinion as to whether or not Mr. Malone on behalf of Wrench Transportation was truthful or untruthful?

A.     I don't know if everyone formed an opinion about that.

Q.     Do you know if you did?

A.     I was very much on the fence about whether he had been truthful.  I certainly was not convinced.  But I would say that I was on the fence.   Tr. (June 14, 2002) at 62:2-11.

| | |
|---|---|
| MR. BARDIS: | Your Honor, I think it was from his office, and McMahon was working with Kennedy, and Kennedy also has the correspondence establishing that he would conduct a hearing, and he and Mr. Malone, would have a meeting, an informal meeting. |
| THE COURT: | That he would conduct the meeting? |
| MR. BARDIS: | He would have a meeting. |
| THE COURT: | What is the evidence that Kennedy was involved in conditioning the release of the property on the signing of the release? |
| MR. BARDIS: | Your Honor, they are from the same department. |

See Tr. (July 23, 2007) at 45:13-15.

Thus, at best, Plaintiffs theorize that because Defendants McMahon and Kennedy "are from the same department," Kennedy must, therefore, have conspired with McMahon in delaying the return of the vehicles. However, "[i]t is not sufficient at the summary judgment stage for Malone, the non-moving party, to rest on allegations of a conspiracy. Rather, in order to raise a genuine issue of material fact he must produce sufficient evidence to allow a reasonable jury to find that a conspiracy existed." Wrench I, 136 Fed. Appx. at 523. Because Plaintiffs have come forward with no evidence establishing a causal connection between Kennedy's actions and Plaintiffs' alleged injuries, Defendants' motion for summary judgment as to Defendant Kennedy

is hereby granted.[9]

### **Defendant McMahon**

Defendants argue that "[o]nly a supervisor in the Civil Remedies and Forfeiture Bureau would have any final decision making authority regarding a seizure and forfeiture." (Def. Statement of Material Facts, ¶ 71).  Defendant McMahon was a DAG assigned to the Civil Remedies Bureau of the Division of Criminal Justice. (<u>Id.</u>, ¶ 2).  Because McMahon was not a supervisor in the Civil Remedies and Forfeiture Bureau, Defendants argue that McMahon had no authority to dismiss the forfeiture proceedings.  (Def. S.J. Br. at 41).  Therefore, according to Defendants, Plaintiffs cannot establish the requisite causal connection between McMahon's actions and Plaintiffs' injuries. (<u>Id.</u> at 40-41).

Plaintiffs, on the other hand, allege that "McMahon stated at the conclusion of Malone's interview under oath . . . that she would process the papers to return Malone's vehicles," thus demonstrating McMahon's "authority with respect to returning the vehicles." (Pl.'s Response to Def. Statement of Material Facts, ¶ 71).  Because Defendants concede that "[d]uring the course of the civil litigation, DAG McMahon offered to settle the State's forfeiture case against Wrench,"[10] the Court finds that a sufficient causal connection between McMahon's actions and Plaintiffs' alleged injuries has been established.  As a result, the Court will proceed with its

---

[9] Even assuming, <u>arguendo</u>, that Plaintiffs <u>had</u> demonstrated a sufficient causal connection between Kennedy's actions and Plaintiffs' injuries, for the reasons discussed herein, Defendant Kennedy would nevertheless be entitled to qualified immunity for such actions inasmuch as Plaintiffs have failed to establish that their interest in the seized vehicles constitutes a protected property interest to which the Fourteenth Amendment's substantive due process protection applies.

[10] <u>See</u> Def. S.J. Br. at 43; Def. Statement of Material Facts, ¶ 74.

analysis of Defendants' arguments as they relate to Defendant McMahon.

B.     **Qualified Immunity**[11]

Defendants claim that they are entitled to qualified immunity from Plaintiffs' section 1983 claim, and are thus shielded from suit. See generally Saucier v. Katz, 533 U.S. 194, 200-01 (2001); Wright v. City of Philadelphia, 409 F.3d 595, 599 (3d Cir. 2005). "The Supreme Court has set forth a two-step objective reasonableness test to determine whether qualified immunity should be granted." Barton v. Curtis, 497 F.3d 331, 335 (3d Cir. 2007). The threshold inquiry, in determining whether a party is entitled to qualified immunity is whether, viewing the facts in the light most favorable to Plaintiffs, the facts alleged show that Defendants' conduct violated a constitutional right. See, e.g., Saucier, 533 U.S. at 201; Wright, 409 F.3d at 600. Thus, Plaintiffs bear the initial burden of showing that Defendants' conduct violated a constitutional right. See, e.g., Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." See Saucier, 533 U.S. at 201.

However, if a favorable view of the Plaintiffs' submissions reveals the violation of constitutional right, this Court must determine whether such a right was clearly established. See id.; Wright, 409 F.3d at 600. To be clearly established, "the contours of the right must be

---

[11] The Court disagrees with Plaintiffs' conclusory assertion that Defendants' entitlement to qualified immunity "was rejected by the Third Circuit." (Pl. Opp'n Br. at 41). To the contrary, the Third Circuit specifically stated that, "to the extent that Malone is arguing that Kennedy and McMahon are not entitled to either absolute or qualified immunity, Appellants' argument is meritless, and can be rejected without discussion." Wrench II, 212 Fed. Appx. at 95 n. 3; see also Schrob v. Catterson, 948 F.2d 1402, 1419 (3d Cir. 1991) ("Qualified immunity will provide sufficient protection to prosecutors managing seized property.").

sufficiently clear that a reasonable official would understand that what he is doing violates that right." See Saucier, 533 U.S. at 202; Barton, 497 F.3d at 335.  Plaintiffs, again, bear the burden of demonstrating that the constitutional or statutory rights at issue were clearly established. See, e.g., Sherwood, 113 F.3d at 399.  If the Court finds that Defendants violated such clearly established constitutional or statutory rights, they are not entitled to qualified immunity for their actions. See, e.g., Wright, 409 F.3d at 599-600.

### (i)    Violation of a Constitutional Right[12]

It is clear that, as a threshold matter, in adjudicating Plaintiffs' section 1983 claim, the Court must consider whether a constitutional violation occurred.  See Saucier, 533 U.S. at 201. Similarly, in assessing Defendants' qualified immunity defense, the Court must first determine whether Defendants' conduct violated a constitutional right. See id.  Thus, regardless of whether the Court first considers Plaintiffs' 1983 claim, or Defendants' qualified immunity defense, the

---

[12]  Plaintiffs' contention that this Court has already ruled, with respect to Defendant Bradley, that Plaintiffs had a clearly established constitutional right to their property, is well taken.  See Tr. (Oct. 27, 2003) at 16:23-25.  Nevertheless, given that (a) the issue has now been the subject of far more extensive briefing, and (b) this Court's October 27, 2003 decision with respect to Defendant Bradley was  reversed by the Third Circuit, albeit on different grounds, see Wrench I, 136 Fed. Appx. at 522, the Court will revisit the issue of qualified immunity, in its entirety. See, e.g., Higgins v. California Prune & Apricot Grower, Inc., 3 F.2d 896, 898 (2d Cir. 1924) (explaining that "it is now well settled that the 'law of the case' does not rigidly bind a court to its former decisions") (citing Messenger v. Anderson, 225 U.S. 436 (1912)). Furthermore, because summary judgment was granted as to Defendant Bradley by the Third Circuit, this approach will not affect the disposition of Plaintiffs' case as against said defendant.

To the extent that Plaintiffs claim that they have successfully demonstrated the existence of a constitutional violation based findings made by Judge Lifland at the motion to dismiss stage, any such argument is meritless. See, e.g., S.C. v. Deptford Tp. Bd. of Educ., No. 01-5127, 2006 WL 1784591, at *14 (D.N.J.) (explaining that "the law of the case doctrine does not prevent a court from granting summary judgment where a court previously denied a motion to dismiss using the more liberal standards governing Rule 12 motions").

inquiry begins with an assessment of whether a constitutional violation has occurred.

Plaintiffs argue that "[t]he evidence shows that Kennedy and McMahon callously refused to return plaintiffs' seized vehicles that they knew were necessary to his livelihood so that they could coerce Malone into providing testimony against other targets." (Pl. S.J. Br. at 19). According to Plaintiffs, such conduct deprived Plaintiffs of their property, in violation of the substantive component of the Due Process Clause. The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." Nicholas, 227 F.3d at 138. Thus, while the Fourteenth Amendment protects certain property interests, "not all property interests worthy of procedural due process protection are protected by the concept of substantive due process." Id. at 140 (quoting Reich v. Beharry, 883 F.2d 239, 243 (3d Cir.1989)). "Rather, to state a substantive due process claim, 'a plaintiff must have been deprived of a particular quality of property interest.'" Id. (quoting DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 598 (3d Cir.1995)). The determination of whether a particular property interest constitutes this "particular quality" depends on whether the interest is "fundamental" under the Constitution. See, e.g., id. Thus, in order to prevail on a non-legislative substantive due process claim, Plaintiffs must establish that they have a protected property interest to which the Fourteenth Amendment's due process protection applies. See, e.g., Hill, 455 F.3d at 235 n. 12; Desi's Pizza, Inc., 321 F.3d at 427; Nicholas, 227 F.3d at 140.[13]

Plaintiffs characterize the alleged constitutional violation as:

_____

[13] In Wrench I, the Third Circuit specifically declined to express an opinion as to whether "an owner's interest in vehicles properly seized and held subject to a forfeiture action is protected by the Due Process Clause of the Fourteenth Amendment." Wrench I, 136 Fed. Appx at 522.

> The intentional and substantive wrong that defendants committed when they intentionally refused to remit the Wrench vehicles notwithstanding the defendants' collective belief in Malone's innocense and the conditioning of the return of the vehicles on Malone's provision of false testimony and a personal release for all defendants.  This motive was improper and lead to the dispossession of plaintiffs' property, therefore, plaintiffs have a claim for a deprivation of substantive due process constitutional rights.

(Pl. Opp'n Br. at 37).[14]  Based on Plaintiffs rather ambiguous characterization, the Court construes the alleged property interest at issue as Plaintiffs' interest in the seized vehicles.

Defendants argue that no constitutional violation has occurred because Plaintiffs' substantive due process claim is grounded in the notion that Defendants' actions deprived them of their interest in the seized vehicles, in violation of their substantive due process rights; however, the Third Circuit has limited its substantive due process protection of property interests to real property. (Def. S.J. Br. at 40).

Defendants correctly note that the Third Circuit has "so far limited non-legislative substantive due process review to cases involving real property ownership," and has admittedly been reluctant to extend substantive due process protection. Nicholas, 227 F.3d at 141 (citing to

_____

[14] Plaintiffs' Amended Complaint similarly alleges that:

> Defendants' intentional use of the continued forfeiture of Wrench's vehicles to coerce Malone into cooperating with their criminal investigation of third parties deprived Wrench Transportation Systems, Inc. and Malone of property without due process of law, in violation of the Fourteenth Amendment to the Constitution of the United States.

(Am. Compl., ¶ 38).

<u>Collins v. City of Harker Heights</u>, 503 U.S. 115 (1992)).[15]  Plaintiffs provide no legal basis to

refute Defendants' position.[16]  To the contrary, Plaintiffs' opposition brief is replete with broad

and conclusory statements lacking specific legal support.  For example, Plaintiffs argue that

> A reasonable person would be aware that these actions are wrong,
> unlawful and violative of the most fundamental and well known
> constitutional rights enjoyed by citizens of the United States of
> America. . . . In short, refusing to return property that is needed for
> someone's livelihood when you know they are innocent so that you
> can obtain a release is improper, against well established law and
> conscience shocking.

---

[15] In <u>Collins</u>, the United States Supreme Court explained the following:

> As a general matter, the Court has always been reluctant to expand
> the concept of substantive due process because guideposts for
> responsible decisionmaking in this unchartered area are scarce and
> open-ended. The doctrine of judicial self-restraint requires us to
> exercise the utmost care whenever we are asked to break new
> ground in this field. It is important, therefore, to focus on the
> allegations in the complaint to determine how petitioner describes
> the constitutional right at stake and what the city allegedly did to
> deprive her husband of that right.

503 U.S. 115, 125 (1992) (internal citation omitted).

[16] Plaintiffs' reliance on <u>Reitz v. County of Bucks</u>, 125 F.3d 139 (3d Cir. 1997), and
<u>Schrob v. Catterson</u>, 948 F.2d 1402 (3d Cir. 1991) for the generalized proposition that "[a] state
official that seizes property and wrongfully retains it thereafter violates the owner's constitutional
rights and may be liable under 42 U.S.C. § 1983" is misplaced for the following reasons. (Pl.
Opp'n Br. at 41).  First, the Third Circuit did not address – much less determine – whether the
property interest at issue in <u>Reitz</u> is protected by the substantive component of the Due Process
Clause.  Secondly, the Court's analysis in <u>Schrob</u> was limited to the defendant's entitlement to
absolute immunity. <u>See Schrob</u>, 948 F.2d at 1407 n. 4 ("With respect to qualified immunity, the
record before us on this motion to dismiss is so limited that we cannot decide whether the rights
that Catterson and the Agents allegedly violated were clearly established, or even established in
the first place.").  Plaintiffs' reliance on <u>Lavicky v. Burnett</u>, 758 F.2d 468, 476 (10th Cir. 1985),
and <u>Coleman v. Turpen</u>, 697 F.2d 1341 (10th Cir. 1982) – neither of which appear to involve
substantive due process claims – is likewise unavailing.

(Pl. Opp'n Br. at 43).  Similarly, during oral argument, Plaintiffs' counsel presented several broad theories in support of the proposition that Plaintiffs' interest in the seized vehicles is fundamental under the Constitution, and, therefore, that the deprivation of such property interest constitutes a violation of the substantive component of the Due Process Clause.  In particular, Plaintiffs' counsel argued that: (1) the seized vehicles "were part and parcel of the interdependent relationship that Malone had in exercising his right to contract,"[17] and (2) "it is in Mr. Malone's life and liberty to freely engage in business. These vehicles were closely or were the essence of his business."[18]  The Court will address each argument, in turn.

### (a)    Right to Contract

Plaintiffs' counsel argued, during the July 23, 2007 oral argument, that the constitutional violation at issue is "[t]he right to freely enter into a contract."  Tr. (July 23, 2007) at 23:1-2.  As a preliminary matter, the Court notes that this argument was not raised in Plaintiffs' opposition brief; rather, it was raised for the first time during oral argument.  Therefore, this argument will not be considered, as it was not properly before this Court.  See, e.g., Garver v. Garver, No. 96-2507, 1997 WL 47801, at *6 n. 1 (S.D.N.Y. Feb. 5, 1997).  Even if the Court were inclined to entertain such an argument, Plaintiffs provide no legal or factual basis to substantiate such a theory.

### (b)    Right to "Engage in Business"

At oral argument, Plaintiffs' counsel also characterized the fundamental right at issue as

---

[17] Tr. (July 23, 2007) at 22:14-16.

[18] Id. at 18:22-24.

Plaintiffs' right to "engage in business." Tr. (July 23, 2007) at 18:22-24.  In particular, Plaintiffs' counsel explained that "these were the vehicles that were the sole source of his livelihood and the livelihood of the employees that he had under him." Tr. (July 23, 2007) at 23:15-17.  Again, the Court notes that this argument was not expressly raised in Plaintiffs' opposition brief. Accordingly, it is not properly before this Court and need not be considered.  Even if the Court were inclined to consider this argument, for the reasons that follow, the Court finds that Plaintiffs have failed to meet their burden in demonstrating that one's right to "engage in business" is fundamental under the Constitution.

As a preliminary matter, the Court construes Plaintiffs' argument in this regard as akin to the argument that employment rights are fundamental.  Although the parties did not brief this issue – because it was raised for the first time at oral argument – the Court notes that the plaintiff in Nicholas made a similar argument in claiming that his tenured professorship was a property interest worthy of substantive due process protection.  See Nicholas, 227 F.3d at 136.  In particular, the plaintiff in that case claimed that defendants violated the substantive component of the Fourteenth Amendment's Due Process Clause by "firing him for an arbitrary, irrational or improper reason." Id. at 138.

The Third Circuit began its analysis by addressing the issue of whether the plaintiff's property interest in his tenured professorship was entitled to substantive due process protection. In finding that it was not,[19] the Third Circuit explained, in relevant part, as follows:

---

[19]  In finding that the plaintiff's property interest in his tenured professorship was not entitled to substantive due process protection, the Third Circuit joined the majority of the courts of appeals that have addressed the issue. See Nicholas, 227 F.3d at 142.

> Nicholas's tenured public employment is a wholly state-created
> contract right; it bears little resemblance to other rights and
> property interests that have been deemed fundamental under the
> Constitution. We agree with the analysis of the District Court in
> Homar v. Gilbert that "it cannot be reasonably maintained that
> public employment is a property interest that is deeply rooted in the
> Nation's history and traditions." Nor does public employment
> approach the interests " 'implicit in the concept of ordered liberty
> like personal choice in matters of marriage and family.' "
> Accordingly, we view public employment as more closely
> analogous to those state-created property interests that this Court
> has previous deemed unworthy of substantive due process than to
> the venerable common-law rights of real property ownership
> implicated in DeBlasio.

Nicholas, 227 F.3d at 143 (internal citations omitted); see also Collins, 503 U.S. at 128

(explaining that "state law, rather than the Federal Constitution, generally governs the substance

of the employment relationship.").  In light of the foregoing, to the extent that Plaintiffs analogize

the deprivation of their right to their vehicles as a deprivation of their right to "engage in

business" or to pursue their "livelihood," Plaintiffs have failed to meet their burden in

establishing that such interests – much like employment rights – are fundamental. See, e.g.,

Medeiros v. Vincent, 431 F.3d 25, 32 (1st Cir. 2005) (stating that the "right to 'make a living' is

not a 'fundamental right,' for either equal protection or substantive due process purposes.").

    Therefore, given (1) the Third Circuit's limitation of property interests worthy of (non-

legislative) substantive due process protection to real property ownership,[20] (2) the Third

Circuit's reluctance to extend substantive due process protection "to other, less fundamental

property interests,"[21] including employment rights, (3) the United States Supreme Court's

---

[20] See Nicholas, 227 F.3d at 141.

[21] Id.

cautioning to lower courts to exercise "the utmost care whenever we are asked to break new ground in this field,"[22] and (4) Plaintiffs' failure to provide the Court with any legal basis in support of their assertion that an owner's interest in his vehicles is a fundamental right created by the Constitution, the Court determines that Plaintiffs have failed to establish that their interest in the seized vehicles constitutes a protected property interest to which the substantive component of the Due Process Clause applies.[23]   See generally Desi's Pizza, 321 F.3d at 427 (expressing "serious doubts" over whether plaintiffs' allegations – that defendants wrongfully deprived plaintiffs of their ability to put their bar/restaurant to "productive use" – state a substantive due process claim).  Therefore, because Plaintiffs have failed to establish a violation of their substantive due process rights, Defendant McMahon is entitled to qualified immunity for her actions in delaying the return of the seized vehicles, and conditioning the return of the vehicles on the execution of a release.[24]  See, e,g,, Saucier, 533 U.S. at 201.  Accordingly, the Court grants Defendants' motion for summary judgment as to Defendant McMahon.

---

[22] See Collins, 503 U.S. at 124.

[23] The Court, therefore, need not determine (a) whether Defendants' actions rise to the level of conscience shocking, or (b) whether Defendants' actions were objectively reasonable in light of the clearly established law.

[24] It is unclear whether this Court's finding should result in a dismissal of Plaintiffs' Amended Complaint based on Plaintiffs' failure to establish a cause of action under section 1983 or based on qualified immunity. See Wright v. City of Philadelphia, 409 F.3d 595, 600 (3d Cir. 2005). The parties do not brief this issue. The Third Circuit admittedly has been inconsistent on this issue. See id.  However, the Third Circuit emphasized that "[a]s a practical matter, the outcome will be the same whether we conclude that the officers are immune from suit or instead, that the plaintiff has no cause of action." Id.

## <u>CONCLUSION</u>

For the reasons set forth above, the Court grants Defendants' Motion for Summary Judgment as to Defendants Kennedy and McMahon.  Plaintiffs' Motion for Summary Judgment is, therefore, denied as moot.

An appropriate Order accompanies this Opinion.


DATE: November 28, 2007                          /s/ Jose L. Linares
                                                 United States District Judge